Ruffin, Chief Justice.
 

 It is not necessary, in so plain a case, that the facts should be minutely detailed. We think it
 
 clear
 
 that the plaintiff cannot have an account of the estate of the intestate, Adam Torrance. He died in June, 1780, and the bill was filed in October, 1836. Between June, 1780, and February, 1781, a sale was made by the administrators; and from the depreciation of the currency of
 
 *212
 
 the period, the personal estate, including debts, may probably have ^mounted to something less than £200
 
 specie, to
 
 be divided between the widow and eight children. In February, 1781, the British army, in its march through this State, passed the family residence and burned it and the furniture and books of accounts, and destroyed most of the other property. Elizabeth, the intestate of the plaintiff, was an infant at her father’s death, and was brought up and supported by her pother, the administratrix, with whom she resided until she came of age, in 1790, and afterwards until her marriage, jn 1801. It does: not directly appear, that the administrator Hugh Torrance, or, after his death, that Mrs. Torrance came to an account with Elizabeth of her father’s estate, and paid her share of it. But there is a strong presumption of fact in the affirmative. Both parties have examined Adam Torrance, a son of the intestate Adam; and he says, that, from the destruction of the British, and the depreciation of the paper currency, the nett estate, after paying debts, amounted to but little, but that for his share of that, the administrator settled with him, and, as he understood in the family — though he does not know it — he settled also with the other children. At all events, this witness or any other does not mention ever having heard Elizabeth at any time, either before or after her marriage, complain of not having received her share, to her satisfaction. But whether such a settlement aptually took plape or not, is npf very material. The plaintiff cpmes too late with his bill for an account, after tjie lapse of fifty-six years from the death of the intestate, of forty-six from the coining of age of the party entitled to the account, and
 
 fif
 
 thirty-five after the death of the surviving administratrix, by whom the account ought to have been rendered. These facts — not to say any thing of the state of the times and the loss of papers by fire and accident, are, in themselves, sufficient to bar the relief sought-
 

 The plaintiff attempted to account for this
 
 laches
 
 by representing that McKnight understood the negroes, received from his mother-in-law in 1801, were given by her in absolute property, and received by him in satisfaction of his wife’s share of fyer father’s estate: whereas, they have been recov
 
 *213
 
 ered by the mother’s executors, upon the ground that they were not thus give.n, but only lent tor life. But this does not answer the difficulty at all. In the first place, there is no evidence of any such understanding of the transaction on the part of McKnight, or that those negroes had any connection with his wife’s share of her father’s estate. In the next place, we must take it now, that the negroes were not transferred to McKnight, either in payment, or as an absolute gift to his wife, bat on a loan to himself. If so, he, being a party to the transaction, coul.d not have misunderstood its character, and been thereby misled as to his rights in respect to his wife’s distributive share of her father’s estate. It may be possible and probable, that the jury were mistaken in the trial at law, 1 Dev. & Bat. 284, as tq the real purpose of the mother, when she put the negroes in her daughter’s possession. But if so, the effects of that error cannot be evaded in the method here adopted. The transaction was altogether independent of her duty to account with the next of kin of her late husband and intestate. The plaintiff is not, therefore, entitled to any relief in respect to the .estate of Adam Torrance, deceased; and his bill, so far as it seeks the same, must be dismissed with costs.
 

 The bill likewise alleges, that the will of Mrs. Torrance does not dispose of the negroes, whose value has been recovered in the action of trover from this plaintiff, by her executors; and that the intestate Elizabeth, who survived her mother, is entitled to a share thereof as one of her next of kin, and prays an account in respect thereof also. To this the defendants do not make noy objection on the score of multifariousness; but have answered and submitted to account, and, indeed paid into court a certain sum as and for the share of the monies in their hands belonging to the plaintiff as administrator. The plaintiff is, therefore, entitled to an account upon this part of the case; and he may either take out of the office the sum paid in for him and put an end to the suit, or, if not satisfied with the account of Mrs. Torrance’s estate rendered by her executors, he may have a reference in the usual form to have those accounts taken, and his intestate’s share ascertained under the direction of the court.
 
 *214
 
 But that he will do, of course, at the risk of the costs, in case he fails to shew himself entitled to more than was paid in.
 

 Per Curiam. Decree accordingly.